LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL ACUÑA, an individual. | **Case No.:  5:26-cv-2834** |
| Plaintiff, | **COMPLAINT FOR DAMAGES**<br>1. **False Arrest/ False Imprisonment**<br>2. **Assault and Battery**<br>3. **Violations of the Bane Act (Cal. Civil Code § 52.1)** |
| v. | 4. **Intentional Infliction of Emotional Distress of Plaintiff**<br>5. **Violations of Civil Rights** |
| United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive, | 6. **Conspiracy to Commit Civil Rights Violations**<br>7. **Fourth Amendment – Unlawful Detention and Arrest**<br>8. **Fourth Amendment -- Excessive Use of Force**<br>9. **Fifth Amendment – Denial of liberty without due process of law**<br>10. **First Amendment Violations – Interference by Defendants** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**COME NOW**, Plaintiff **JOEL ACUÑA**, ("Plaintiff"), alleges as follows:

1

COMPLAINT FOR DAMAGES

## JURISDICTION AND VENUE

1.      This action arises directly under the United States Constitution.

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4.      This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the First Amendment, Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5.      This civil rights and state tort action arises out of Plaintiff's unlawful detention, restraint, and mistreatment by federal agents in Encinitas, California.

6.      Plaintiff alleges that Defendants violated his constitutional rights by detaining him without reasonable suspicion or probable cause, using excessive force, and depriving him of his liberty without due process of law, despite Plaintiff's full compliance and repeated statements, in both English and Spanish, confirming that he is a United States citizen and his requests that Defendants verify his identity.

7.      Plaintiff further alleges that Defendants' conduct included unlawfully

detaining him for several hours, deploying a taser against him, dragging him and throwing him down a flight of stairs, in a **"horrific takedown"** that was captured in a video. The Defendants physically restrained and handcuffed Plaintiff, and placed Plaintiff into a van with multiple detainees, and transported him into custody to a holding facility in San Diego, all without lawful justification.

8. Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and motivated by racial profiling and discriminatory intent, including treating Plaintiff differently based on his race, ethnicity, and/or perceived national origin.

9. The policies, practices, and customs underlying Defendants' conduct, including the failure to properly verify identity following facial recognition errors, the use of unnecessary force, and the prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10. Plaintiff asserts claims based on Defendants' violations of his rights under the First, the Fourth and Fifth Amendments to the United States Constitution, as well as related state-law claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11. Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries he suffered, and to deter similar unconstitutional conduct in the future.

## **PARTIES**

12. At all times relevant, Plaintiff JOEL ACUÑA (Hereinafter "Plaintiff" or "ACUÑA"), a U.S. citizen, was an individual residing in the City of Yucaipa.

13. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security,

COMPLAINT FOR DAMAGES

Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16. At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff are informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such employment, agency, or representation. Plaintiff further allege that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18. At all times mentioned herein, each Defendant was responsible in some

manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19. Defendants DHS, ICE, CBP and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are federal agents.

20. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22. Plaintiff JOEL ACUÑA is a United States Citizen of Latino Descent, living in Yucaipa, California. ACUÑA was born in Lynwood California.

23. On or about October 15, 2025, ACUÑA was present at his workplace in Encinitas, California, where he was filming federal agents detaining individuals outside the premises.

24. Agents employed by CBP and/or ICE observed ACUÑA recording their activities. While ACUÑA was filming, agents ran toward him. At that time, ACUÑA was not committing any crime and had not been informed that he was suspected of any crime.

25. ACUÑA ran into a nearby apartment building and ascended a flight of stairs. During this encounter, one of the Federal agents deployed a taser against ACUÑA. After deploying the taser, the agent physically grabbed ACUÑA, dragged

COMPLAINT FOR DAMAGES

him, and threw him down the stairs. During the incident, Defendants dragged Plaintiff on the floor and Defendants threw Plaintiff down a flight of stairs, in a "horrific takedown" that was captured in a video; including the takedown.

26. Before and during the use of the taser, ACUÑA repeatedly stated, in both English and Spanish, that he was a United States citizen. ACUÑA also asked the agents to check his wallet and identification to confirm his citizenship.

27. The Federal agents did not check ACUÑA's identification. Instead, they forced ACUÑA to the ground, handcuffed him, and placed him into a van with his coworker and approximately seven other individuals.

28. At the time of the incident, ACUÑA had not committed any crime and had not been informed of any basis for detention. ACUÑA was lawfully present at his workplace performing construction duties.

29. ACUÑA's statements regarding his U.S. citizenship were audible and clear. At least one agent present spoke Spanish and was capable of understanding ACUÑA's statements.

30. ACUÑA was detained from approximately 8:00 a.m. to 5:00 p.m. on October 15, 2025, and was transported to a holding facility in San Diego during that period.

31. During his detention, ACUÑA informed Federal agents that he suffers from seizures and takes prescribed medication twice daily. ACUÑA repeatedly requested permission to retrieve his medication from his car prior to transport, explaining that the medication was necessary to prevent seizures. The Federal agents did not permit ACUÑA to access his medication.

32. Throughout the detention, ACUÑA was not provided with specific information regarding any alleged criminal activity. Federal agents stated that ACUÑA was a suspect in a crime but did not provide further details.

33. As a result of the agents' use of force, ACUÑA sustained injuries to his knee, stomach, head, and back. ACUÑA continues to experience physical pain.

COMPLAINT FOR DAMAGES

34.    ACUÑA also experienced emotional distress as a result of the incident.

35.    During the encounter, ACUÑA was prevented from continuing to observe and record the agents' activities outside his workplace.

36.    ACUÑA was not free to leave at any point during his detention.

37.    Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials.

**A. DHS Adopted Policies to Further the Administration's Directive to Increase Immigration Enforcement**

38.    DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

39.    These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

40.    The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested. [1]

41.    The 3,000-arrests-per-day quota is the "minimum" goal. [2]

42.    "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan. [3]

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id*.

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State*

COMPLAINT FOR DAMAGES

43.     The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing." [4]

44.     To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1.  Turning Federal Law Enforcement Into Immigration Enforcement**

45.     On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

46.     Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

47.     The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal

---

*of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

COMPLAINT FOR DAMAGES

immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Fedral judge.

48.    On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers. [5]

49.    Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers. [6]

50.    By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers. [7]

**2.    Prioritizing Random Arrests Over Targeted Enforcement**

51.    Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

52.    But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a Federal judge.

53.    The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

COMPLAINT FOR DAMAGES

make arrests. [8]

54.   Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry; and Defendants engaged in "racial profiling."

55.   DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

56.   A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look," [9] and "racial profiling" was permitted.

**B.    Operation "Return to Sender"**

57.   Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino. [10]

58.   The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

59.   The allegations in that action included that individuals were detained

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

[11] *Id.*

without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status.

60.     Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

61.     Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

62.     ACUÑA timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. The claim was rejected.

## FIRST CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against all Defendants)

63.     Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

64.      Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of his freedom of movement by use of force, threats of force, and unreasonable duress.

65.     Defendants detained, restrained, and arrested Plaintiff without reasonable suspicion, probable cause, or any lawful justification.

66.     Plaintiff did not consent to the detention, restraint, or arrest.

67.     On or about October 15, 2025, in Encinitas, California, Defendants approached Plaintiff while he was present at his workplace filming federal agents

detaining individuals outside the premises.

68. Defendants ran toward Plaintiff while he was not committing any crime and had not been informed that he was suspected of any crime.

69. Plaintiff ran into a nearby apartment building and up a flight of stairs, at which point one of the Defendants deployed a taser against him.

70. After deploying the taser, Defendants physically grabbed Plaintiff, dragged him, threw him down the stairs, forced him to the ground, handcuffed him, and placed him into a van with his coworker and approximately seven other individuals.

71. Plaintiff repeatedly informed Defendants, in both English and Spanish, that he is a United States citizen and requested that Defendants check his wallet and identification to confirm his identity.

72. Defendants did not check Plaintiff's identification and did not take reasonable steps to verify his identity or citizenship.

73. Defendants detained Plaintiff from approximately 8:00 a.m. to 5:00 p.m. on October 15, 2025, during which time he was transported to a holding facility in San Diego.

74. During the detention, Defendants stated that Plaintiff was a suspect in a crime but did not provide any details or basis for such claim.

75. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any legal basis to detain or arrest him. Defendants' conduct in detaining, restraining, and arresting Plaintiff was unlawful and without privilege or consent.

76. Defendants' conduct was a substantial factor in causing harm to Plaintiff.

77. As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

78. Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive and

12

COMPLAINT FOR DAMAGES

exemplary damages.

79. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

80. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

81. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

82. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

83. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

84. Defendants, without lawful justification, physically detained and arrested Plaintiff in Encinitas, California, including deploying a taser against him, dragging him, throwing him down a flight of stairs, and placing him into custody.

85. During the detention and arrest, Defendants applied physical force to Plaintiff, including tasing him, forcing him to the ground, restraining him, and maintaining him in custody for several hours in a confined and coercive environment.

86. The force used by Defendants was harmful and offensive, and was carried out without Plaintiff's consent and without any legal justification or privilege.

87. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against him.

88. The force used by Defendants was unreasonable and excessive under the

COMPLAINT FOR DAMAGES

circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat, and repeatedly informed Defendants, in both English and Spanish, that he is a United States citizen while requesting that they verify his identity.

89. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, including pain and bodily harm, as well as emotional distress, humiliation, and psychological trauma.

90. Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

91. The conduct of Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive and exemplary damages against the individual Defendants.

92. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

93. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against all Defendants)

94. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

95. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

96. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats,

14

COMPLAINT FOR DAMAGES

intimidation, and coercion.

97.    Defendants' conduct included, but was not limited to: unlawfully detaining and arresting Plaintiff in Encinitas, California; deploying a taser against Plaintiff; dragging Plaintiff and throwing him down a flight of stairs; physically restraining Plaintiff; forcing Plaintiff to the ground and handcuffing him; placing Plaintiff into a van with multiple detainees; and transporting Plaintiff to a holding facility in San Diego despite Plaintiff's repeated statements regarding his identity and United States citizenship.

98.    During the incident, Defendants engaged in coercive conduct independent of the underlying detention, including the use of physical force and restraint to compel Plaintiff's compliance, the deployment of a taser without warning, the refusal to credit or investigate Plaintiff's repeated assertions of identity and citizenship made in both English and Spanish, and the prolonged detention of Plaintiff despite readily available means to verify his identity.

99.    The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

100.    Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

101.    Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

102.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

103.    The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

104.   Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

105.   Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

106.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

### FOURTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(By Plaintiff against all Defendant)

107.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

108.   Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff; and inflicted the intentional infliction of emotional distress.

109.   Defendants' conduct included, but was not limited to: unlawfully detaining and arresting Plaintiff in Encinitas, California without reasonable suspicion or probable cause; deploying a taser against Plaintiff; dragging Plaintiff and throwing him down a flight of stairs; forcing Plaintiff to the ground; physically restraining and handcuffing Plaintiff; placing Plaintiff into a van with multiple detainees; transporting Plaintiff to a holding facility in San Diego; and disregarding Plaintiff's repeated statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants verify his identity.

110.   Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff was not committing any crime, posed no threat, repeatedly informed Defendants of his identity and citizenship, requested verification, and was subjected to significant force and prolonged detention.

111.   Defendants' conduct was intentional and/or reckless, and was carried out

COMPLAINT FOR DAMAGES

with a conscious disregard for Plaintiff's rights and well-being.

112. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

113. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of being wrongfully detained and treated as a criminal.

114. Plaintiff also suffered physical manifestations of emotional distress, including pain, discomfort, and bodily harm associated with the force used during his detention and arrest.

115. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

116. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

117. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendants inflicted intentional infliction of emotional distress.

118. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

119. Plaintiff further seeks punitive damages against the individual DOE Defendants.

**FIFTH CLAIM FOR RELIEF**

**Violation of Civil Rights**

(By Plaintiff against all Defendants)

120. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

17

COMPLAINT FOR DAMAGES

121. This cause of action is brought for violation of Plaintiff's Civil rights under the Fourth, Fifth and First Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

122. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

  a. detaining and arresting Plaintiff without reasonable suspicion or probable cause;

  b. failing to properly investigate or verify Plaintiff's identity despite Plaintiff's repeated statements that he is a United States citizen and his requests that Defendants check his identification;

  c. disregarding Plaintiff's statements regarding his identity and citizenship, including statements made in both English and Spanish;

  d. continuing and prolonging Plaintiff's detention for several hours without lawful justification;

  e. transporting Plaintiff to a holding facility in San Diego without verifying his identity or citizenship;

  f. deploying a taser against Plaintiff without warning or lawful justification;

  g. using unnecessary and excessive force, including tasing Plaintiff, dragging him, throwing him down a flight of stairs, forcing him to the ground, and handcuffing him;

  h. failing to recognize that Plaintiff posed no threat and was not committing any crime;

  i. failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force;

18

COMPLAINT FOR DAMAGES

j.  failing to adequately train, supervise, and discipline agents regarding lawful detention, investigation, and use of force; and

k.  failing to properly communicate and coordinate information among agents during the incident.

123.  As a direct and proximate result of Defendant's negligence, Plaintiff suffered physical pain, injury, emotional distress, humiliation, and other damages.

124.  The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

125.  The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

126.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

127.  Defendants' conduct was a substantial factor in causing Plaintiff's harm.

128.  Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendants)

129.  Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

130.  This cause of action is brought for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. Plaintiff alleges that this lawsit is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights,

and an actual deprivation resulting from that agreement.

131. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful physical beatings without reasonable suspicion or probable cause.

132. In furtherance of this agreement, the Individual Defendants acted in concert to: approach and detain Plaintiff at his workplace in Encinitas, California while he was recording their activities; pursue Plaintiff into a nearby apartment building; deploy a taser against Plaintiff; drag Plaintiff and throw him down a flight of stairs; force Plaintiff to the ground and physically restrain and handcuff him; disregard Plaintiff's repeated statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants verify his identity; place Plaintiff into a van with multiple detainees; detain Plaintiff for an extended period of time; and transport Plaintiff to a holding facility in San Diego.

133. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

134. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria. Defendants treated Plaintiff differently from similarly situated individuals who were not of Plaintiff's race or ethnicity, including by subjecting Plaintiff to prolonged detention, restraint, and investigation despite the presentation of valid identification and proof of United States citizenship.

135. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on his appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

136. The decision to continue Plaintiff's detention despite Plaintiff's repeated

20

COMPLAINT FOR DAMAGES

statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants verify his identity, further demonstrates that Defendants' actions were not based on legitimate law enforcement objectives, but were instead driven by discriminatory intent.

137. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of his constitutional rights.

138. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

139. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

140. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

141. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

142. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SEVENTH CLAIM FOR RELIEF

### Fourth Amendment—Detention and Arrest

(By Plaintiff against all Defendants)

143. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

144. This cause of action is brought for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

COMPLAINT FOR DAMAGES

145.  The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

146.  Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

147.  At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and was lawfully present at his workplace at the time of the incident.

148.  Despite Plaintiff's repeated statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants check his identification to verify his identity, Defendants unlawfully prolonged Plaintiff's detention without justification.

149.  Defendants further violated Plaintiff's Fourth Amendment rights by subjecting him to excessive force, including physically restraining Plaintiff, and forcefully throwing Plaintiff down a flight of stairs causing physical pain and injury to Plaintiff.

150.  Defendants' conduct, including the unlawful detention, use of physical force, confinement in a dark holding room, and continued restraint and transfer of Plaintiff despite clear evidence of his identity and United States citizenship, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

151.  Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

COMPLAINT FOR DAMAGES

152.  Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

153.  These policies, practices, and customs included, but were not limited to:

a.    detaining individuals without reasonable suspicion or probable cause following facial recognition errors;

b.    failing to implement adequate procedures to verify United States citizenship using valid identification; and

c.    using excessive force against Plaintiff by throwing Plaintiff down a flight of stairs in a horrific "takedown" that was captured on video, and without any legitimate law enforcement justification.

154.  Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

155.  As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

156.  Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

157.  Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

158.  Plaintiff further seeks punitive damages against the individual DOE Defendants.

///

///

///

23

COMPLAINT FOR DAMAGES

## EIGHT CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force

(By Plaintiff against all Defendants)

159. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

160. This cause of action is brought for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects individuals from the use of excessive force by law enforcement officers during the course of a detention or seizure.

161. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

162. Notwithstanding the absence of any legitimate law enforcement need, Defendants deployed a taser against Plaintiff, physically restrained him, dragged him and threw him down a flight of stairs, and maintained him in custody for several hours in a confined and coercive environment.

163. The force used against Plaintiff caused physical pain and injury, including injuries to his knee, stomach, head, and back, which were exacerbated by the prolonged nature of his restraint and detention.

164. Defendants' use of force, including the deployment of a taser, physical restraint, and prolonged detention of Plaintiff, was unnecessary, disproportionate, and not justified by any legitimate governmental interest.

165. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

166. Each individual Defendant is liable for the use of excessive force because

24

COMPLAINT FOR DAMAGES

they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

167.   As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

168.   The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages.

169.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## NINTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of liberty without due process of law

(By Plaintiff against all Defendants)

170.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

171.   The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

172.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

173.   Defendants deprived Plaintiff of his liberty by unlawfully detaining and restraining him in Encinitas, California for a prolonged period of time without probable cause, reasonable suspicion, or any lawful justification.

174.   During this detention, Defendants restricted Plaintiff's freedom of movement by deploying a taser against him, physically restraining him, dragging him and throwing him down a flight of stairs, placing him into a van with multiple

COMPLAINT FOR DAMAGES

detainees, and preventing him from leaving despite his compliance and repeated statements regarding his identity and United States citizenship.

175. Defendants unlawfully seized and retained Plaintiff's personal property during the detention.

176. Defendants' decision to continue Plaintiff's detention despite Plaintiff's repeated statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants verify his identity demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

177. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release him.

178. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

179. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

180. Defendants acted with deliberate indifference to Plaintiff's rights by continuing to detain him despite clear evidence of his identity and citizenship.

181. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

182. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

183. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

184. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

COMPLAINT FOR DAMAGES

185. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

186. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## TENTH CLAIM FOR RELIEF

### First Amendment Violations - Interference by Defendants

(By Plaintiff against all Defendants)

187. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

188. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of his rights under the First Amendment by interfering with and retaliating against his lawful activity of observing and recording federal agents performing their duties in a public setting.

189. Plaintiff engaged in constitutionally protected activity by observing and recording federal agents as they detained individuals outside his workplace in Encinitas, California. Plaintiff's conduct was lawful, occurred in a public setting, and addressed matters of public concern.

190. Defendants took adverse government action against Plaintiff by pursuing him, deploying a taser against him, detaining and arresting him, and preventing him from continuing to observe and record their activities.

191. Plaintiff's protected activity was a substantial or motivating factor in Defendants' actions. Defendants' conduct was initiated in response to Plaintiff's recording of their activities.

192. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including loss of First Amendment freedoms, physical injury, emotional distress, and other damages in an amount to be determined at trial.

193. The conduct of each individual Defendant was willful, wanton, malicious,

27

COMPLAINT FOR DAMAGES

and carried out with reckless disregard for Plaintiff's First Amendment rights, entitling Plaintiff to an award of punitive damages.

194. Defendants are liable for the violations of Plaintiff's First Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

195. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

196. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## PRAYER FOR RELIEF

197. WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor and against Defendants United States of America, and UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;

c. For reasonable attorneys' fees pursuant to applicable law;

d. For costs of suit incurred herein;

e. For pre-judgment and post-judgment interest as allowed by law; and

f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026                    CARRILLO LAW FIRM, LLP

By:_____
     Luis A. Carrillo, Esq.,
     Attorney for Plaintiff

28
COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury.


DATED: May 26, 2026                                    CARRILLO LAW FIRM, LLP



By: _____
　　　　Luis A. Carrillo, Esq.,
　　　　Attorney for Plaintiff

COMPLAINT FOR DAMAGES